### No. 3763

### Second Circuit

---

### BAPTIST HOSPITAL v. CAPPEL

---

(July 5, 1930. Opinion and Decree.)
(December 2, 1930. Writ of Certiorari and Review Refused by Supreme Court.)

---

Hawthorn & Stafford, of Alexandria, attorneys for plaintiff, appellee.

Peterman, Dear & Peterman, of Alexandria, attorneys for defendant, appellant.

DREW, J. The Baptist Hospital, plaintiff in this suit, is a non-profit making corporation, organized under the laws of the State with its domicile at Alexandria, Louisiana, where it owns, maintains and operates a general hospital for the care of the sick. It is owned by the Baptist denomination and is managed by a board of trustees, elected from the members of that church in Louisiana. In connection with the hospital, it operates a training school for young ladies who desire to become nurses.

The hospital now consists of two brick buildings, which are used as the hospital proper, and in addition, owns a frame building located behind the hospital which is used as a nurses' home. The hospital is located in the downtown section of Alexandria and is in the block immediately adjoining Red River, and the nurses' home, which is behind the hospital, is within a few feet of the Red river levee.

In the latter part of the year 1926, the Louisiana Nurses' Board threatened to withdraw the standing of the Nurses' Training School unless a new nurses' home was built, declaring the present home unsatisfactory. The hospital, not having sufficient funds on hand, through its board of trustees, decided to put on a campaign to raise funds by appealing to the generosity of the citizens of Alexandria and surrounding communities. The goal set was $100,000, with the understanding that the first money collected was to be used in building a new nurses' home and the remainder to add to the present hospital. As is usual in such cases, the goal set was not reached and there was barely enough subscribed to build a nurses' home.

The defendant in this suit, Dr. J. T. Cappel, a practicing physician in the city of Alexandria, signed a pledge card for the sum of $500. The card is dated March 10, 1927, and made payable in four installments of $125 each, in May, August, November and April following. He paid the first installment of $125 and thereafter refused to pay the other installments, and this suit followed.

The card he signed reads in part as follows:

"For a valuable consideration, receipt of which is hereby acknowledged, and in consideration of the subscription of others, I hereby subscribe and promise to pay to the order of the Baptist Hospital at Rapides Bank, Alexandria, Rapides Parish, Louisiana.

"It is understood that this money is for the construction and equipment of a home for nurses and for an addition to the present hospital buildings and equipment of the Baptist Hospital in Alexandria, Louisiana, and that the first call on the money collected shall be for the Home for Nurses."

It was the intention of the hospital authorities at the time of taking the sub-

scriptions, to build the new nurses' home on the old site and to add to the present hospital, but before they had collected sufficient monies to begin the erection of the nurses' home, they were informed by engineers connected with the government that when the government began its work in the Red river valley to prevent further overflows, it would very likely put the present site of the nurses' home within the levee, and advised against spending a large sum of money on this property. Faced with this situation, it became necessary to look around for another building site for the nurses' home and the board of trustees finally decided on a lot on the outer edge of the city and about two miles from the present location. They purchased a tract of land there consisting of about five acres and began the erection of the home, which they continued until all money that had been collected gave out. The property on which the new home is located was purchased with funds other than that raised by the drive and did not in any way deplete that fund.

We gather from the record that this is the first of a number of like suits that will follow if the hospital is successful in this one, and, in that respect, is a test one.

The defendant resists the payment of his pledge or subscription for the reason, as alleged—failure of consideration and error and fraud. However, the real defense is that he objects to the nurses' home being built two miles from the hospital, which, he contends, causes the consideration to fail. He testified that he would not have subscribed to the fund had he known that the home was going to be built at the present location. He further contends that he is relieved from paying his pledge for the reason that the home was not built within the time it was represented that it would be built; that the home two miles from the hospital will be absolutely useless; and that the misrepresentation made to him as to the place the new home was to be built and the time in which it was to be completed are such as to relieve him from liability on his pledge.

On these issues the case was tried in the lower court and judgment was rendered in favor of the plaintiff, from which judgment the defendant has taken this appeal.

There can be no question about the validity of the contract at the time the pledge card was signed. The Supreme Court of this State correctly laid down the law governing such contracts in the case of Louisiana College v. Keller, 10 La. 164, wherein the court said:

"But the defendant seeks to avoid the payment of the sum subscribed by him, under the plea that his promise was without consideration, and is not binding on him. An obligation, according to the Code is not the less binding though its consideration or cause is not expressed. We are not informed as to the consideration of this promise, by anything on the face of the papers. It may have been the advantage the defendant expected to derive from the establishment of a college at his own door, by which he would save great expense in the education of his children, or it may have been a spirit of liberality and a desire to be distinguished as the patron of letters. Whatever it may have been, we see nothing illicit in it; nothing forbidden by law, and the promise binds him, if he consented freely, and the contract had a lawful object. In contracts of beneficence, the intention to confer a benefit is a sufficient consideration."

The only remaining question is whether or not the acts of the Baptist Hospital have been such, since the signing of the pledge card, to relieve the defendant of liability.

Necessity and sound judgment required

the building of the new home some place other than the old hospital site. It would have been foolish indeed to have spent fifty or sixty thousand dollars on this site after being informed by engineers that the property would likely be taken in by the levee when the improvement of Red river began. It was necessary to secure another location and the duty of deciding on that location was upon the board of trustees of the hospital and not upon the subscribers. The board decided upon the new location and began the erection of the building, spending many thousand dollars, without any complaint from any subscriber until the money collected had been expended. There is much testimony in regard to the home being satisfactory or unsatisfactory that great a distance from the hospital, with about as many witnesses testifying one way as the other. That, however, does not affect the defendant. He testified that his purpose in making the pledge was to prevent the standing of the training school being withdrawn and thereby causing the ladies in training to lose the time they had spent in training there. It was his kind feeling for the young ladies in training and his generosity that caused him to sign the pledge. The purpose for which he claims to have given has been accomplished, the standing of the training school has not been withdrawn and he should be satisfied unless he can show some injury to himself, which he has failed to show.

There is no merit in his contention that the home was not completed within the time represented to him. He well knew that the building of the home depended upon the subscriptions made and collected, and if sufficient subscriptions had not been made, the home could never have been built nor can it be completed until those that have been made are paid. He, having subscribed and refused to pay, is not in very good grace to complain about the home not being completed on time, when it was the failure of him and others to meet their obligations that prevented the building of the home.

Defendant does not show that any benefit he expected to receive from the new nurses' home has been in any way lessened or that he has been in any way injured by the change in plans; therefore, he is bound by his pledge.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be affirmed, with costs.