318 So.2d 631 (1975)
Cecil MOBLEY and Iona S. Mobley, Plaintiffs and Appellants,
v.
Jack LEE, Defendant and Appellee.
No. 5110.
Court of Appeal of Louisiana, Third Circuit.
September 5, 1975.
Gaharen & Richey by Joseph Wilson, Jena, for plaintiffs-appellants.
Long & Peters by Jimmie C. Peters, Jena, for defendant-appellee.
Before HOOD, CULPEPPER and MILLER, JJ.
CULPEPPER, Judge.
This is a petitory action. The plaintiffs claim ownership of 60 acres of land in LaSalle Parish, as heirs and as vendees of other heirs of Miss Artie Smith, who died in 1967. The defendant, Jack Lee, claims ownership by purchase from Mrs. Letha *632 Mae Chapman Keene, who acquired the property by donation from Miss Artie Smith in 1966. Neither plaintiffs nor defendant claim to be in possession of the property. Both claim ownership by recorded titles originating in their common author, Miss Smith. The district court rendered judgment in favor of defendant, dismissing plaintiffs' suit. Plaintiffs appealed.
The substantial issue is whether the 1966 donation from Miss Artie Smith to Mrs. Letha Mae Chapman Keene was purely gratuitous. If it was, then the subsequent unilateral revocation thereof by Miss Smith was of no effect, since the revocation was not for a cause permitted by LSA-C.C. Articles 1556-1560, nor by an action in accordance with Article 1561.
The evidence shows that prior to 1966 Miss Artie Smith owned and lived on the 60 acres in question. In the early part of 1966, Miss Smith became ill and was hospitalized. On her discharge from the hospital in the spring of 1966, she lived in a nursing home for a short time. Mrs. Keene removed her from the nursing home and took her to live in the Keene home in LaSalle Parish. After she had lived in the home with Mr. and Mrs. Keene and their six children for a period of about three months, Miss Smith asked Mrs. Keene to move with her back to the "Old Homeplace", which is the 60 acres in question. Mrs. Keene agreed, and they moved into an old house which was on the property adjacent to a smaller home into which Miss Smith moved.
On August 23, 1966, Miss Smith and Mrs. Keene appeared before a notary public and two witnesses and executed the act of donation in question. The act reads in pertinent part as follows:
". . . Miss Artie Smith declared. . . that in consideration of the love and affection which she bears for her niece, LETHA MAE CHAPMAN KEENE, . . . and for her personal care, she does by this act and these presents irrevocably GIVE, GRANT, CONFIRM, DONATE AND DELIVER unto her said niece. . . the following described property, to wit: (emphasis supplied)
(Then follows a description of the 60 acres.)
"And now LETHA MAE CHAPMAN KEENE, a person of the full age of majority, and a resident of and domiciled in LaSalle Parish, Louisiana, does hereby personally appear in the presence of the undersigned witnesses and me, Notary, and accepts the said donation made to her aforesaid, for herself and her heirs, successors and assigns, and acknowledges due delivery and possession of the above described property, so donated to her.
"TO HAVE AND TO HOLD the above described property unto the said DONEE, her heirs and assigns forever.
"It is understood by and between DONOR AND DONEE that the property hereinabove donated is intended as an extra portion for Donee and as an advantage to be received by her over and above her co-heirs in the settlement of Donor's Succession."
The Keenes lived on the property for about one year. During this period of time, Miss Smith, although suffering from a malignant brain tumor, was able to take care of herself and live alone in her little house, except that the Keenes took her to the doctor and to buy groceries and to other places requiring use of an automobile.
During the early part of 1967, trouble developed between Miss Smith and the Keenes. According to the testimony of Mrs. Keene, Miss Smith, because of her brain tumor, became irrational. She says that there was no argument or disagreement, but that Miss Smith said that the six children "bothered her."
Mrs. Keene testified that one of the most irrational things Miss Smith did was *633 to sit on her front porch with a rifle in her hands. Mrs. Keene became alarmed for the safety of her six children and consulted Miss Smith's physician. The doctor advised Mrs. Keene to move because of the possibility of Miss Smith harming someone.
On July 3, 1967, Miss Smith appeared before a notary in Jena and executed a revocation of the donation. In the revocation, Miss Smith states "the same was an onerous donation given for the promise of the personal care of herself by the donee therein, appearer being an aged woman 78 years of age living alone and unable to herself take care of her personal needs, the donee having obtained the said donation of said property from her on the promise that she would personally look after and care for her all the rest of her life and take care of her personal attention and needs so long as she might live." In the act of revocation, Miss Smith states further that the donee had failed to care for her and had moved from the property in question and evidenced no intention of taking care of Miss Smith for the remainder of her life. The instrument concludes by a statement that the donation is revoked. Mrs. Keene did not sign the act of revocation.
Mrs. Keene testified she knew about the act of revocation the day it was executed. She insists that she continued to live on the property for a short time after the revocation was signed. However, Mrs. Keene admittedly moved from the property to another home in LaSalle Parish. She says the reason she moved was on the advice of Miss Smith's doctor and because she was afraid that Miss Smith might harm one of her children.
On October 27, 1967, Mrs. Keene sold the property to the defendant, Jack Lee, for the price of $2,500. Mrs. Keene testified that when she was approached by Lee with an offer to purchase, she consulted an attorney who finally advised her that she owned the property and could sell it despite the act of revocation.
Miss Smith died during the latter part of 1967, the exact date of her death not being clear from the record. On March 20, 1973, a judgment of recognition and possession was rendered in her succession. Plaintiffs were recognized as two of the heirs. They also purchased certain interests from other heirs. They filed the present suit on June 8, 1973.
As stated above, the substantial issue is whether the act of donation was purely gratuitous or was onerous.
LSA-C.C. Article 1523 provides:
"There are three kinds of donations inter vivos:
"The donation purely gratuitous, or that which is made without condition and merely from liberality;
"The onerous donation, or that which is burdened with charges imposed on the donee;
"The remunerative donation, or that the object of which is to be recompense for services rendered."
Since the onerous donation and the remunerative donation are not real donations, the rules peculiar to donations inter vivos do not apply to them, LSA-C.C. Articles 1524-1526. In consequence thereof, the rules restricting the causes for revocation of a donation inter vivos apply only to purely gratuitous donations and not to onerous or remunerative donations. These rules regarding revocation are set forth in the following code articles:
"Art. 1559. Donation [Donations] inter vivos are liable to be revoked or dissolved on account of the following causes:
"1. The ingratitude of the donee;
"2. The non-fulfillment of the eventual conditions, which suspend their consummation;
"3. The non-performance of the conditions imposed on the donee;

*634 "4. The legal or conventional return."
"Art. 1560. Revocation on account of ingratitude can take place only in the three following cases:
"1. If the donee has attempted to take the life of the donor;
"2. If he has been guilty towards him of cruel treatment, crimes or grievous injuries;
"3. If he has refused him food, when in distress."
The defendant contends, and the district judge held, that the act of donation is purely gratuitous, and therefore the subsequent revocation by Miss Smith, not being in accordance with the rules set forth in LSA-C.C. Articles 1559-1561, is of no effect.
The plaintiffs argue that the act of donation is ambiguous. They say the clause "for her personal care" is susceptible of three different constructions: (1) It could mean the property was donated to Mrs. Keene on condition that she furnish in the future personal care to Miss Smith, in which event the donation is onerous. (2) It could mean that the consideration was for past care furnished by the donee to the donor, in which event the donation is remunerative. (3) It could mean that the property was for the personal care of Mrs. Keene, in which event the donation is purely gratuitous.
It is the contention of the plaintiffs that since the act of donation is ambiguous, parol testimony was admissible to show the intent of the parties, and that the testimony which was introduced shows the parties intended that the donation is onerous.
If the donation is in fact onerous, as plaintiffs contend, then it is not a real donation and the rules for the construction of contracts apply. These rules, LSA-C.C. Articles 1945-1962, state generally that the words of a contract must be construed according to their general use and that in determining whether there is ambiguity, the entire contract as a whole must be considered. As the trial judge pointed out in his well considered reasons for judgment, the donor in the present case declared that the donation is "in consideration of the love and affection which she bears for her niece." The donor further states that she "irrevocably" gives, donates, etc. the property to her niece, "to have and to hold. . . forever." The words of the donation as a whole show an intention on the part of the donor that it be purely gratuitous. The only words which can possibly raise any question as to the gratuitous nature of the donation are contained in the clause "for her personal care". Plaintiffs contend that the use of the pronoun "her" raises a question as to whose care was intended, Miss Smith's or Mrs. Keene's.
The following article of our Civil Code is particularly applicable here:
"Art. 1958. But if the doubt or obscurity arises for the want of necessary explanation which one of the parties ought to have given, or from any other negligence or fault of his, the construction most favorable to the other party shall be adopted, whether he be obligor or obligee."
In the present case, the clause "for her personal care" is contained in that portion of the donation in which Miss Smith states her intention. She fails to make it clear whose "personal care" was intended. Furthermore, Miss Smith did not make it clear whether the care referred to was the past care furnished, or future care to be furnished, by Mrs. Keene. The clause must therefore be construed against Miss Smith and in favor of Mrs. Keene.
We note particularly, that insofar as the statement of acceptance by Mrs. Keene is concerned, there is no declaration that she accepts the donation subject to any condition whatever creating an obligation on her part to care for Miss Smith.
*635 It is our conclusion that construing the instrument as a whole and applying the rules set forth above, the act of donation is not ambiguous, or, if it be ambiguous, it must be construed against the donor, who failed to make it clear, and in favor of the donee.
Nevertheless, even assuming for the sake of argument that the words used in the act of donation are ambiguous, we think the parole evidence as to all of the facts and circumstances shows also the intention of the parties was that the donation be purely gratuitous and not onerous. The plaintiffs stress the following as supporting their contention that the donation was onerous: (1) At the time of the act of donation, the donor was 78 years of age and in poor health and was in need of personal care, whereas the donee was not in need of care. (2) In the act of revocation, Miss Smith clearly states her intention was to donate the property to Mrs. Keene on condition that the donee take care of the donor for the remainder of donor's life. (3) After the act of revocation was signed by Miss Smith, Mrs. Keene acquiesced in the revocation of the donation by moving from the property.
At the trial, Mrs. Keene testified clearly that it was not her intention to accept the donation on condition that she care for Miss Smith for the remainder of her life. On the contrary, Mrs. Keene testified that although she was not sure what the clause "for her personal care" was intended to mean, she was already taking care of Miss Smith at the time they moved back to the homeplace and intended to continue to take care of Miss Smith regardless of the donation or the revocation. Of course, the facts show that Mrs. Keene actually did take care of Miss Smith until, on the doctor's advice, she moved for fear that Miss Smith would harm one of her children. Mrs. Keene testified also that she explained to the other members of the family that she thought Miss Smith's condition was such that she should be moved to a hospital or a nursing home where she could receive proper care for her deteriorated condition.
The trial judge saw and heard the witnesses and he concluded that, even if the parole testimony is considered, it shows the intention of the parties was that the donation be purely gratuitous, and not onerous. We find no manifest error in this evaluation of the evidence by the district judge.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiffs appellants.
Affirmed.