470 So.2d 913 (1985)
Cheryl SIMMONS, Plaintiff-Appellee,
v.
SOWELA TECHNICAL INSTITUTE, Louisiana Board of Elementary & Security,[1] State of Louisiana, Defendants-Appellants.
No. 83-886.
Court of Appeal of Louisiana, Third Circuit.
May 15, 1985.
Rehearing Denied June 27, 1985.
*915 Robert L. Dow, Lake Charles, and L. Phillip Canova, Plaquemine, for plaintiff-appellee.
Cynthia D. Young and Dan M. Scheuermann, R. Bruce MacMurdo, Baton Rouge, for defendants-appellants.
Before STOKER, LABORDE and KING, JJ.
LABORDE, Judge.
This appeal returns to us after remand from the Louisiana Supreme Court. The defendants, SOWELA Technical Institute, Louisiana Board of Elementary and Secondary Education, and the State of Louisiana (collectively SOWELA), appeal from the trial court judgment granting plaintiff Cheryl Simmons $21,000 in damages for her wrongful dismissal from SOWELA's nursing school in violation of an implied contract between SOWELA and Ms. Simmons. We initially viewed this case as a judicial review of an administrative adjudication.[2] As such, we found the petition was untimely filed and, therefore, we reversed the trial court's judgment and dismissed the case for lack of subject matter jurisdiction. Pursuant to a Writ of Certiorari filed by Ms. Simmons, the Louisiana Supreme Court held that the plaintiff's petition seeks damages in contract and tort invoking the original jurisdiction of the district court.[3] The Supreme Court reversed our prior judgment and remanded the case to us for consideration of the appeal on the merits. After our review of the merits of the case, we reverse and dismiss:

*916 FACTS
Ms. Simmons was dismissed from SOWELA's practical nursing program on May 9, 1975, subject to re-evaluation for readmission in the fall semester. At the time of her dismissal, she had completed eleven (11) of the twelve (12) months required for her degree. The dismissal slip given to her read as follows: "Drop for unethical conduct. Re-entry at 5th term depends on re-evaluation. Relationship of SOWELA Tech. and St. Patrick's strained because of student's action." Ms. Simmons was dropped primarily because she breached school rules and nursing ethics by discussing, outside of the classroom environment, a patient's case and condition with another student not assigned to that particular case. An administrative hearing was held in the summer of 1975 and the decision to drop Ms. Simmons from the nursing program was upheld on September 9, 1975. On the same day, Ms. Simmons filed a timely notice of appeal with the Board of Elementary & Secondary Education (BESE) and with the Fourteenth Judicial District Court. At trial it was stipulated by the parties that plaintiff properly appealed the administrative decision to BESE. Due to administrative delays, it was almost four (4) years later, April 30, 1979, that BESE authorized plaintiff to re-enter a nursing program at any of the vocational schools under its direction.[4]
The next action taken by either party was on May 7, 1980, when Ms. Simmons filed this suit against SOWELA. Her petition seeks damages for alleged breach of contract and negligence on the part of SOWELA in wrongfully discharging her. At trial, Ms. Simmons conceded that her claim for damages based on the alleged negligence of SOWELA (i.e., her tort claim) had prescribed. Therefore, she proceeded only with her claim for damages based on breach of contract by SOWELA. The trial judge found that an implied contract existed between Ms. Simmons and SOWELA and that SOWELA breached that contract when it dismissed her from the nursing school without just cause.
SOWELA subsequently filed this appeal contending the following:
1. The Court erred in not finding that this action had prescribed.
2. The Court erred by substituting its own judgment for SOWELA's that Mrs. Simmons' offense was not serious enough to warrant the disciplinary action taken; the court showed no deference to the school's administrative discretion and further exceeded the bounds of the proper standard of judicial review by stating that it did not agree with the national nurses' code of ethics upon which the disciplinary action was based.
3. The Court erred by awarding speculative damages on lost wages and damages for mental anguish when the theory of recovery sounded in contract.

PRESCRIPTION
Ms. Simmons filed suit almost five years after her alleged wrongful termination from SOWELA's nursing program. As stipulated at trial, her cause of action in tort has prescribed. Therefore, this suit is actionable only if it is subject to the ten (10) year liberative prescription for contracts under La.Civ.Code art. 3544.[5] This brings us to the determinative issue of whether there was a contract between Ms. Simmons and SOWELA.
The jurisprudence provides that a party asserting a contract has the burden *917 of proving it. North American Contracting Corp. v. Gibson, 327 So.2d 444, 449 (La.App. 3rd Cir.1975), cert. denied, 332 So.2d 280 (La.1976); Hebert v. Briley, 295 So.2d 607, 608 (La.App. 3rd Cir.), cert. denied, 300 So.2d 181 (La.1974). Since there is no document evidencing the express intention of the parties to enter into a contract, Ms. Simmons argues that she and SOWELA entered into an implied contract wherein SOWELA agreed to educate her as a practical nurse in exchange for her agreement to meet the academic and disciplinary requirements of SOWELA's nursing program.
La.Civ.Code art. 1779[6] provides the four requisites that are necessary for the validity of a contract. They are:
1) Parties legally capable of contracting.
2) Their consent legally given.
3) A certain object which forms the matter of agreement.
4) A lawful purpose.
La.Civ.Code art. 1779. The trial judge found that the above requisites were met and that the parties bound themselves by a bilateral or reciprocal contract. In his reasons for judgment, the trial judge said that a student obligates himself to: (1) pay all required fees; (2) maintain the prescribed level of academic achievement; and, (3) observe the school disciplinary regulations. In return, the trial judge reasoned, the school obligates itself to award the student a diploma upon the successful completion of a course of study.
The record shows that Ms. Simmons was not required to pay fees to attend SOWELA's nursing program.[7] There is also no evidence that Ms. Simmons was under any civil obligation to maintain the prescribed level of academic achievement or observe the school disciplinary regulations. In the event that Ms. Simmons breached either of the above "obligations," one would not expect SOWELA to have a cause of action against Ms. Simmons for either specific performance or damages. In other words, we find no reciprocity or mutuality of obligation. Ms. Simmons was not bound to do anything. She paid no tuition or entrance fee and she was free to quit the program at anytime. The cornerstone of a bilateral contract is reciprocity of obligation. La.Civ.Code art. 1765. In fact, article 1765 can be construed to say that a bilateral contract is a reciprocal contract.
"It is well settled that reviewing courts will defer to a trial judge's reasonable decision on a question or matter properly within his discretion. It is self-evident, however, that if the trial court's decision was based on erroneous interpretation or application of law rather than a valid exercise of discretion, such an incorrect decision is not entitled to deference."
Kem Search, Inc. v. Sheffield, 434 So.2d 1067, 1071-72 (La.1983). In the present case, the trial judge's "Reasons for Judgment" indicate that his ruling was based on his erroneous belief that the parties were bound by a bilateral or reciprocal contract. Accordingly, we conclude that no bilateral contract existed between Ms. Simmons and SOWELA.
Since the trial judge held that the parties were bound by a bilateral contract, he did not determine whether any other enforceable contract existed between the parties. The law of Louisiana recognizes more than one class of contracts. In addition to the bilateral contract, there is the unilateral contract. La.Civ.Code art. 1765. "A contract is unilateral when, in spite of the fact that at least two parties are necessary for its formation, only one is obligated toward the other or others, without any obligation *918 resulting for the other." 1 S. Litvinoff, Obligations, Sec. 92 in 6 Louisiana Civil Law Treatise 145 (West 1969).
If the association or agreement between Ms. Simmons and SOWELA is a contract, it is more likely to be a unilateral contract. Such a contract, in order to form an enforceable agreement, is also subject to the rules governing contracts in general. La.Civ.Code art. 1777; see generally La. Civ.Code arts. 1756-1900.
One requirement necessary to the validity of a contract is that of a legal cause or "[a] certain object, which forms the matter of an agreement." La.Civ.Code art. 1779. "By the cause of the contract,... [it] is meant the consideration or motive for making it...." La.Civ.Code art. 1896 (emphasis added). In relation to the motive, a contract is considered either gratuitous or onerous, La.Civ.Code art. 1772, and a unilateral contract, in relation to its motive, is gratuitous. La.Civ.Code art. 1773. The unilateral contract, being a gratuitous disposition, must generally be made and accepted by an act passed before a notary public and two witnesses. La.Civ. Code arts. 1536, 1538 and 1539. In the present case, there is no document in authentic form made by SOWELA and accepted by Ms. Simmons which confers upon Ms. Simmons the benefit of an education.
Notwithstanding the formal requirements of a gratuitous disposition or a donation inter vivos, there are certain transfers or promises, appearing to be gratuitous because of their unilateral nature, that do not require a notarial act. Such transfers or promises, gratuitous by definition, become onerous by their exclusion from the field of donations. Two such transfers or promises relevant to this case are: (1) an agreement made for the performance of a natural obligation, La.Civ.Code art. 1759, and (2) an onerous donation, La.Civ.Code arts. 1523, 1524 and 1526.
If SOWELA had a natural obligation to educate Ms. Simmons and if its motive for agreeing to educate her was to fulfill its obligation to educate, then the agreement between SOWELA and Ms. Simmons would be an onerous contract. La. Civ.Code art. 1759; see also La.Civ.Code art. 1761, comments (a) and (d) (West's Special Pamphlet, 1985) (enacted by Acts 1984, No. 331, effective Jan. 1, 1985); Martin, Natural Obligations, 15 Tul.L.Rev. 497, 514 (1941). However, if SOWELA had merely a moral obligation to give Ms. Simmons an education, the agreement between SOWELA and Ms. Simmons is a donation by SOWELA and, if made purely gratuitously or merely from liberality, the agreement would be subject to the requirements of authentic form. La.Civ.Code arts. 1536, 1538 and 1539. But, a donation, the value of which does not manifestly exceed the value of the charges imposed on the donee, is not a real donation; it is an onerous donation. La.Civ.Code art. 1524. And if the value of the things given (i.e., an education, a diploma) do not exceed by one-half that of the charges imposed on the donee (i.e., attend classroom and clinical courses, maintain a level of academic achievement), then the rules peculiar to donations inter vivos do not apply. La.Civ.Code art. 1526; Mobley v. Lee, 318 So.2d 631, 633 (La.App. 3rd Cir.1975). Therefore, if either of the above situations exist in the present case, we will find a binding contract between SOWELA and Ms. Simmons.
We will first determine whether there is a natural obligation to educate Ms. Simmons. The motive or purpose of SOWELA in obligating itself to operate schools, to educate students, and to award diplomas to successful candidates can be found in the Louisiana Constitution of 1974.
"The goal of the public educational system is to provide learning environments and experiences, at all stages of human development, that are humane, just, and designed to promote excellence in order that every individual may be afforded an equal opportunity to develop to his full potential."
LSA-Const. Art. 8, Preamble. "The legislature shall provide for the education of the people of the state and shall establish and maintain a public educational system." *919 LSA-Const. Art. 8, Sec. 1. The State Board of Elementary and Secondary Education (BESE) is designated to supervise and control vocational-technical training.
"It [BESE] shall supervise and control the public elementary and secondary schools, vocational-technical training and special schools under its jurisdiction and shall have budgetary responsibility for all funds appropriated or allocated by the state for those schools, all as provided by law. The board shall have other powers, duties, and responsibilities as provided by this constitution or by law...."
LSA-Const. Art. 8, Sec. 3 (emphasis added).
Notwithstanding the constitutional mandate imposing a duty or an obligation upon SOWELA to educate the people of the State of Louisiana, the question remains as to whether that obligation is an imperfect obligation or a natural obligation. See La. Civ.Code art. 1757.
"The key to the distinction between the imperfect obligation and the natural obligation is given in the draftsmen's notes to the Project of 1832.
`Although this kind of obligation [imperfect obligation] has no legal effect whatever, its definition is introduced because it is frequently referred to by commentators and sometimes with such loose expressions, as might induce a belief that it had the effect of a natural obligation, unless the contrary were declared. In the common law of England, "natural affection" which is an imperfect obligation, is a good consideration for a conveyance. As we do not mean to sanction this principle, it was the more necessary to declare it, because of the danger of introducing from the jurisprudence of our sister states principles inconsistent with that of our own.'
Thus, the `merely moral duties' which are termed imperfect obligations are those elements which compose the animus donandi, and the effect of depriving the imperfect obligation of any legal effect is to affirm the rule that `property can neither by acquired nor disposed of gratuitously, unless by donations.' The natural obligation, by the same token, is an element which takes gratuitous dispositions out of the field of donations.
The natural obligation requires more than a moral duty. To be given effect, the obligation must be binding not only `in conscience' (dans le for de la conscience) but `according to natural justice.' We are referred to the standard of equity, sanctioned by [La.Civ.Code art.] 21, rather than abandoned to the vagaries of the individual who might seek to declare the existence of a natural obligation where there is no more than a duty of charity or gratitude. The civil obligation is a legal tie, while the natural obligation is a sub-legal tie, but a tie nevertheless. The act of will which gives effect to a natural obligation is conceived of, not as a gratuitous disposition of property, but as a phase of an onerous transaction. The natural obligation, invented by the praetors to offset the strictness of the Roman law of slavery and patria potestas, was adopted into Louisiana to remove from the donation field acts giving effect to recognized sub-legal relations."
Martin, Natural Obligations, 15 Tul.L. Rev. 497, 505-06 (1941) (footnotes omitted). The important fact is that natural obligations have been endowed with a legal entity by the lawmaker, as opposed to the merely moral obligations. Therefore, we must determine whether SOWELA's constitutional mandate to educate is more than merely of a moral nature.
La.Civ.Code art. 1758 recognizes four kinds of natural obligations. Until recently, there has been some controversy as to whether this classification is either exclusive or merely illustrative. The most recent jurisprudence has held that the listing in article 1758 is illustrative, not exclusive.[8] *920 The illustrative nature of the list is only natural since it would be an impossible endeavor to confine human initiative and creativeness within the narrow limits of a legal enumeration. 1 S. Litvinoff, Obligations, Sec. 354 in 6 Louisiana Civil Law Treatise 616 (West 1969). "If it were not so, the legal catalogue would amount to a limitation of the reasons human beings may have to act, in flagrant contradiction of the principle of freedom so many times asserted in relation to the contractual field." Id. at 617.
As previously stated, the constitutional mandate to educate the people of the State of Louisiana does impose an obligation upon SOWELA. However, we find that the obligation is a moral or imperfect obligation; rather than a natural obligation.
The Louisiana Supreme Court has twice held that laws declaring a state policy and directing a subordinate body to carry that policy into effect creates no contract. State ex rel. Munsch v. Board of Com'rs. of Port of New Orleans, 198 La. 283, 3 So.2d 622, 624 (1941); State ex rel. Fisk v. Police Jury of Jefferson, 34 La.Ann. 41, 46 (1882), rev'd on other grounds, 116 U.S. 131, 6 S.Ct. 329, 29 L.Ed. 587 (1885). The court in Munsch said that there is a presumption that such a law is not intended to create private contractual or vested rights, but merely declares a policy to be pursued until the Legislature shall ordain otherwise. State ex rel. Munsch v. Board of Com'rs. of Port of New Orleans, 198 La. 283, 3 So.2d at 624. Fisk questioned whether an ordinance fixing the salary of a Parish Attorney operated as a contract between the parish and the one appointed to the position. State ex rel. Fisk v. Policy Jury of Jefferson, 34 La.Ann. at 45-46. The Supreme Court of The United States, on Writ of Review in Fisk, said:
"We do not assert the proposition that a person elected to an office for a definite term has any such contract with the government or with the appointing body as to prevent the Legislature or other proper authority from abolishing the office or diminishing its duration or removing him from office....
But after the services have been rendered under a law, resolution or ordinance which fixes the rate of compensation, there arises an implied contract to pay for those services at that rate. This contract is a completed contract. Its obligation is perfect and rests on the remedies which the law then gives for its enforcement."
State ex rel. Fisk v. Police Jury of Jefferson, 116 U.S. at 134-35, 6 S.Ct. at 330.
One may argue the U.S. Supreme Court recognized that, while the mandate by law is not a civil obligation of the parish, it is a natural obligation, and, when the parish acts upon the mandate and makes a promise which is accepted by another person, an onerous contract has been formed; the cause being the natural obligation. We conclude otherwise. We find that the U.S. Supreme Court was faced with the situation where a parish made a promise based on a moral obligation. This promise, being a donation, had a charge imposed on the donee. Such a donation is an onerous donation. La.Civ.Code arts. 1536, 1538 and 1539. The court simply found that the thing given by the parish (i.e., a certain salary) did not exceed by one-half that of the charges imposed on the donee (i.e., services as an attorney). Therefore, the rules peculiar to donations inter vivos did not apply and the parish was bound by a civil or "perfect" obligation. See La.Civ. Code arts. 1526 and 1757.
We find that a general mandate imposed by law upon the State is an imperfect or moral obligation, rather than a natural obligation. We arrive at this result because we adopt the approach that a natural *921 obligation must fulfill two requirements. They are:
"(1) It must be owed by one particular person to another predetermined person, and not to anybody in general (as the duty of charity, which is owed to whoever is in need).
(2) Its fulfillment must be susceptible of pecuniary evaluation."
1 S. Litvinoff, Obligations, Sec. 354 in 6 Louisiana Civil Law Treatise 617-18 (West 1969); see Spaht and Johnson, Natural Obligations, 37 La.L.Rev. 332, 337-38 (1977); see also La.Civ.Code art. 1762, comment (b) (West's Special Pamphlet 1985) (enacted by Acts 1984, No. 331, effective Jan. 1, 1985). In the present case, we find the obligation owed by SOWELA to educate the people of this State is owed to "the people" in general and not to any specific predetermined persons. SOWELA's promise, accepted by Ms. Simmons, to train her as a practical nurse and to award her with a diploma upon successful completion of her course of study was based on a moral obligation. Therefore, SOWELA's promise was a donation and, for it to be binding, there must be evidence of a notarial act. La.Civ.Code art. 1536.
However, as noted above, if this donation is an onerous donation where the value of the thing given by the donor does not exceed by one-half that of the charges imposed on the donee, authentic form is not required. La.Civ.Code art. 1526.
In exchange for training Ms. Simmons to be a Licensed Practical Nurse (LPN) and awarding her with a diploma, SOWELA required that Ms. Simmons, for a period of 12 months, attend classroom and clinical courses, maintain a level of academic achievement, and observe school disciplinary regulations. Although there is little evidence comparing the pecuniary value of SOWELA's donation to the pecuniary value of the charges imposed on Ms. Simmons, we find such a determination from the record is possible.
The pecuniary value of things donated are measured according to their market value at the time they are donated. The value of Ms. Simmons' training as an LPN can be measured by the expected rise in her earning potential after graduation multiplied by her work life expectancy.[9]
The record shows that Ms. Simmons' earning potential before entering SOWELA's nursing program was approximately $5,100.00 per year (working as a nursing assistant at $425.00/MTH). Her earning potential after graduation would be approximately $9,000.00 per year (working as an LPN at $750.00/MTH). Ms. Simmons would have an increase in earning potential of approximately $3,900.00 per year. The record also indicates that as of July, 1975, the date Ms. Simmons would have graduated from SOWELA, she was no older than thirty-five (35) years. Therefore, she had many working years left to reap the benefits of her education at SOWELA.
The pecuniary value of the charges imposed on the donee are measured according to market value to the donee of the things he is expected to give in return. See Succession of Faust, 189 La. 417, 179 So. 583, 585 (1938). To obtain her training as an LPN, Ms. Simmons was asked to attend school for twelve (12) months. As a result, she gave up her earning potential for a one year period. As stated earlier, her yearly earning potential was $5,100.00.
If Ms. Simmons works as an LPN for twenty (20) years, she will have earned approximately $78,000.00 more than if she had remained a nursing assistant. If she works as an LPN for only two (2) years, she will have earned approximately $7,800.00 more than if she had remained a nursing assistant. We consider it reasonable to assume that Ms. Simmons will work as an LPN for at least two full years *922 during the rest of her work life expectancy. Accordingly, one and one-half times the value of the charges imposed upon Ms. Simmons (i.e., 1.5 × $5,100.00 = $7,650.00) is vastly exceeded by the value of the things given by SOWELA (i.e., the increase in Ms. Simmons' life earning potential). Therefore, we find that, in this case, the rules peculiar to donations (i.e., the requirement of a notarial act), do apply to SOWELA's onerous donation to Ms. Simmons. Since an act in authentic form is not evidenced by the record, the agreement is not enforceable as an onerous donation.
An alternative theory exists for which recovery may be afforded to Ms. Simmons. It is sometimes termed "promissory estoppel" or "detrimental reliance." The elements of this theory of recovery were summarized in a recent decision by this court. "(1) A representation by conduct or work; (2) Justifiable reliance thereon; and (3) A change of position to one's detriment because of the reliance." John Bailey Contractor v. State, 425 So.2d 326, 328 (La. App. 3d Cir.1982) (citation omitted), aff'd, 439 So.2d 1055 (La.1983). In greater detail, the Supreme Court's affirmance of Bailey quoted the formula of equitable estoppel in this jurisdiction:
"`Equitable estoppel may be defined as the effect of the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct. Founded upon good faith, the doctrine is designed to prevent injustice by barring a party, under special circumstances, from taking a position contrary to his prior acts, admissions, representations, or silence.'"
439 So.2d at 1059 (citation omitted).
We note that some confusion in the past has existed in regard to the place of "promissory estoppel" in the law of this state, and similar, if not identical, doctrines applying the same three elements of representation plus justifiable reliance thereon followed by detriment to the person relying have surfaced at various times in the jurisprudence of this state, often under the headings of "detrimental reliance," "promissory estoppel," and "equitable estoppel." See Sanders v. United Distribs., 405 So.2d 536, 537 n. 2 (La.App. 4th Cir.1981) (discussing the various labels and concluding that "whatever the theory of recovery, plaintiff must prove something akin to injurious reliance"), writ denied, 410 So.2d 1130 (La.1982); cf. Dousson v. South Central Bell, 429 So.2d 466, 468 (La.App. 4th Cir.) (examining similar doctrine under which representing party that owes duty to convey true information to relying party may be liable for damages caused by justifiable reliance on theory of "negligent misrepresentation" under Civil Code delictual articles 2315 and 2316), writ denied, 437 So.2d 1135 (La.1983); see generally Herman, Detrimental Reliance in Louisiana LawPast, Present, and Future(?): The Code Drafter's Perspective, 58 Tul.L.Rev. 707 (1984).
Professor Herman calls this theory of recovery "detrimental reliance." He writes:
"For nearly a century, Louisiana courts, in a variety of factual situations, have enforced promises on the ground of detrimental reliance. Yet judicial treatment of the idea has been uneven over the years; the effect of a party's detrimental reliance has been left to the trial judges' sovereign appreciation, and they have not always agreed on the role of this doctrine. Furthermore, to the extent that they have seen detrimental reliance as a `foreign' importation, Louisiana judges have occasionally rejected it on a doctrinaire basis without fully exploring its practical utility.
....
... On the basis of detrimental reliance, Louisiana courts have enforced an insurer's promise to insure even though the insurance policy was not yet issued, an employer's offer of a benefit plan to an employee at the employer's expense when the employee, relying upon it, remained in the employer's service, a pipeline *923 owner's promise of payment to a vessel owner after the latter relied upon the promise to his detriment, and an attorney's commitment to permit his opponent to answer a suit even though the court had not formally ordered an extention of time."
Herman, supra, at 715-16 (footnotes omitted).
The Louisiana Supreme Court, in Bailey, opined that the detrimental reliance doctrine has been judicially developed in this jurisdiction. 439 So.2d at 1059. We agree that, at the time of this case, no codal authority yet explicitly provided an action for detrimental reliance. Cf. La.Civ.Code art. 1967 (West's Special Pamphlet 1985) (enacted by Acts 1984, No. 331, effective Jan. 1, 1985) (effectively adopting the promissory estoppel/detrimental reliance jurisprudence). However, we note that, from a delictual viewpoint, La.Civ.Code art. 2315 is broad enough to encompass an action for detrimental reliance. See Sanders v. United Distributors, Inc., 405 So.2d 536 (La.App. 4th Cir.1981), writ denied, 410 So.2d 1130 (La.1982); Marsalis v. LaSalle, 94 So.2d 120, 125 (La.App.Orl.Cir.1957). We further note that detrimental reliance forms the implicit basis for recovery under at least two present Civil Code articles: article 1837, which allows recovery based on reliance by one performing work even though no contract was formed because of error as to the person, and article 2452, which allows recovery based on reliance in a sales context even though the contract of sale fails because the seller has no title to the thing sold. We also note the mandate of La.Civ.Code art. 21: "In all civil matters, where there is no express law, the judge is bound to proceed and decide according to equity. To decide equitably, an appeal is to be made to natural law and reason, or received usages, where positive law is silent." Positive laws in Louisiana are the acts of governing bodies. See La.Civ.Code art. 1; see also A. Yiannopoulos, Louisiana Civil Law System (Pt. 1) secs. 30-31 (1977). The positive law, while not expressly declaring the availability of the specific doctrine of detrimental reliance, nonetheless does not proscribe its use by the courts of this state, and it offers several useful analogies in which detrimental reliance forms the implicit basis for recovery. Furthermore, it cannot be denied that, through whatever authority, promissory estoppel/detrimental reliance doctrines are an accepted and vital part of our jurisprudence.
In any event, we find that, in this case, the doctrine of detrimental reliance does not imply an enforceable contract. Ms. Simmons' strongest basis for recovery under the above doctrine existed delictually, under article 2315. However, such a cause of action has prescribed. Ms. Simmons, in her dealings with SOWELA, relied upon an onerous donation that required the formality of an act in authentic form. The jurisprudence on contracts in this State has applied the doctrine of detrimental reliance in two situations: (1) cases in which there is a bilateral or reciprocal agreement which, for some reason, is unenforceable as an onerous contract;[10] and (2) cases which present strong public policy reasons for protecting a certain type of promisee.[11] Neither situation exists in the case at bar. We shall not extend the doctrine of detrimental reliance to afford recovery when the plaintiff's reliance is based on a donation that requires the formalities of authentic form. See generally La.Civ.Code art. 1967, comment (f) (West's Special Pamphlet 1985) (enacted by Acts 1984, No. 331, effective Jan. 1, 1985).
*924 We hold that Ms. Simmons has no cause of action for breach of contract against SOWELA. Therefore, we shall not rule on the merits of Ms. Simmons' allegations against SOWELA because her potential delictual remedy has prescribed.
Due to the fact that we find merit in appellants' first assignment of error, we shall not consider its two remaining contentions for reversal on appeal. Accordingly, the judgment of the trial court is reversed and the case is dismissed. All costs of this appeal are charged to Ms. Simmons, the appellee in this case.
REVERSED AND DISMISSED.
STOKER, J., concurs.
NOTES
[1] The record indicates that the correct citation of this defendant should be "Louisiana Board of Elementary and Secondary Education."
[2] Simmons v. SOWELA Technical Institute, 458 So.2d 565 (La.App. 3rd Cir.1984).
[3] Simmons v. SOWELA Technical Institute, 462 So.2d 1255 (La.1985).
[4] The record contains no documentary evidence indicating the reasons BESE permitted plaintiff to re-enter nursing school. The record does not indicate that BESE disagreed with and therefore reversed the earlier decision made at the administrative hearing; it merely shows that the parties stipulated to the fact that BESE authorized plaintiff to re-enter any of its nursing programs.
[5] This article was vacated by the amendment and reenactment of Chapter 4 of Title XXIV of Book III of the Civil Code by Acts 1983, No. 173, eff. Jan. 1, 1984. Ten year liberative prescription is now governed by La.Civ.Code art. 3499.
[6] Titles III and IV of Book III of the Civil Code of 1870, which formerly contained La.Civ.Code arts. 1756 to 2291 were amended and reenacted by Acts 1984, No. 331, to contain La.Civ.Code arts. 1756 to 2057, effective Jan. 1, 1985. See La.Civ.Code arts 1756 to 2291 (West's Special Pamphlet, 1985). This case, occurring before Jan. 1, 1985, will be decided under the law prior to the latest amendments to Titles III and IV of Book III.
[7] Students were only required to pay for their personal books, uniforms, and their state license.
[8] Muse v. St. Paul Fire and Marine Insurance Co., 328 So.2d 698, 705 (La.App. 1st Cir.1976). By Acts 1984, No. 331, effective Jan. 1, 1985, article 1758 was amended and reenacted as La. Civ.Code art. 1762. As reenacted, the legislature solved the above controversy by indicating the illustrative character of the list. La.Civ.Code art. 1762 (West's Special Pamphlet 1985). The legislature commented that the change is in accord with later Louisiana jurisprudence. Id. at comment (b).
[9] Our search of Louisiana's jurisprudence has failed to come across a case where a court has determined the value of a donation of something incorporeal that only serves to increase the recipient's personal earning capacity, such as an education. We recognize that there are several ways to value an education, but we feel the best way to value a vo-tech education is to determine the student's expected rise in his life-earning potential that the education will bring.
[10] E.g., Brunt v. Standard Life Ins. Co. 259 So.2d 575 (La.App. 1st Cir.1972); Continental Casualty Co. v. Associated Pipe & Supply Co., 447 F.2d 1041 (5th Cir.1971); Johnson v. Capital City Ford, 85 So.2d 75 (La.App. 1st Cir.1955); Ever-Tite Roofing Corp. v. Green, 83 So.2d 449 (La. App. 2nd Cir.1955); Robinson v. Standard Oil Co., 180 So. 237 (La.App. 1st Cir.1938).
[11] E.g., W.M. Heroman & Co. v. Saia Electric, Inc., 346 So.2d 827 (La.App. 1st Cir.), writ denied, 349 So.2d 1271 (La.1977); Southern Discount Co. v. Williams, 226 So.2d 60 (La.App. 4th Cir.1969); Baptist Hospital v. Cappel, 14 La.App. 626, 129 So. 425 (2nd Cir.1930); Succession of Gesselly, 216 La. 731, 44 So.2d 838 (1950).