730 So.2d 1048 (1999)
Marilyn Mann WHITMAN, Plaintiff-Appellee,
v.
William Newell WHITMAN, Defendant-Appellant.
No. 31,814-CA.
Court of Appeal of Louisiana, Second Circuit.
March 31, 1999.
*1049 McKeithen, Ryland & Champagne By Rebel G. Ryland, Columbia, Counsel for Appellant.
Dimos, Brown, Erskine & Burkett By Donald R. Brown, Monroe, Counsel for Appellee.
Before NORRIS, KOSTELKA and DREW, JJ.
DREW, J.
William Newell Whitman appeals the judgment revoking two donations made to him by his former wife during their marriage. Arguing that the transactions were onerous donations and that he fulfilled the obligations imposed by the donations, Mr. Whitman contends that the trial court erred in finding that the property transfers were gratuitous donations and subject to revocation for ingratitude. The judgment of the trial court is hereby affirmed.

FACTS
On June 10, 1997, Marilyn Mann Whitman sued Mr. Whitman for divorce based upon his alleged adultery on June 7, 1997. The couple married in 1981 and had no children. In addition to the divorce, Mrs. Whitman requested that the court revoke for ingratitude a donation she made to Mr. Whitman on December 31, 1985 of her one-half interest in immovable property. On August 21, 1997, the trial court signed a divorce judgment in favor of Mrs. Whitman. In addition to prohibiting Mr. Whitman from physically or mentally threatening or harming Mrs. Whitman and enjoining both parties from disposing of community property, the judgment set remaining issues to be heard September 30, 1997. On August 26, 1997, Mrs. Whitman *1050 filed an amended petition which sought annulment of a second donation she made on August 28, 1981 to Mr. Whitman.
When the hearing on the donations commenced, Mr. Whitman had not answered the amended petition. The parties stipulated that Mr. Whitman made a general denial. The August 28, 1981 and the December 31, 1985 donations, along with the testimony and pleadings relative to the divorce, were placed into evidence without objection.
Shortly after their 1981 wedding, Mrs. Whitman donated to her husband a one-half interest in an acre tract on which their home was later built. On cross-examination, she acknowledged that her brother had transferred to her another acre of land adjacent to the property involved in the 1981 donation. In 1991, she also received another piece of contiguous property from her McKeithen cousins. Mrs. Whitman did not know if her husband was included on either the deed from her brother or the donation from the McKeithens. Mrs. Whitman testified she and Mr. Whitman had mortgaged the one-acre tract on two occasions and later paid off the loans.
Mrs. Whitman owned an undivided one-half interest of a 1/32 interest in a much larger tract, which fractional interest she had acquired from her mother. She owned an undivided 300-acre interest in the property in which a number of persons had ownership interests. In 1985, she donated to Mr. Whitman one-half of her undivided interest in that farm and timber land. She and her brother, George Allen Mann, had obtained the property from their mother in a transaction which Mrs. Whitman characterized as estate planning. Although Mrs. Whitman was unsure whether the transaction was a credit sale, whether they made yearly payments and whether the debt had been paid off, Mrs. Whitman acknowledged on cross-examination there was a credit sale deed from her mother and a note that was ultimately canceled. Although the note was canceled in 1990, she denied it had been paid off.
When asked whether yearly payments were made to her mother through rents and royalties, Mrs. Whitman responded "Not really. No." She explained that money given to her mother was always given back to them plus much more. In her view, payments were not made because they were given back to her and Mr. Whitman. She did not know if the payments were considered payments on the large tract and stated:
I mean, it was just a way to get around paying inheritance tax. There was never any actual exchange of money, because they simply gave it back to us. If you're alleging that my husband paid money to my mother, that's ludicrous.
She also acknowledged that the couple initially made payments with community funds to her mother pursuant to the credit sale arrangement. Concerning the 300-acre property interest, Mrs. Whitman did not recall discussing with Mr. Whitman the indebtedness related to the property and did not recall if the document specified the donation was to be irrevocable.
After the couple separated, she learned that Mr. Whitman was involved with another woman, news that was very embarrassing and which made her physically ill. Following Mrs. Whitman's testimony, plaintiffs attorney stated they had made a prima facie case for annulment of the donations and rested.
Mr. Whitman's first witness, Iley Evans, was accepted as an expert in abstracting, title examination and Caldwell Parish law practice. Evans testified that the August 28, 1981 donation from Mrs. Whitman to her husband of one acre contained only one condition; i.e, if Mr. Whitman predeceased Mrs. Whitman, the property returned to Mrs. Whitman, a resolutory condition.
In a related transaction, an April 10, 1984 cash sale deed (Caldwell Parish No. 155091, Con. Bk.148, p. 114) from George Allen Mann and Sonia Dugose Mann conveyed an adjacent one-acre tract to Mr. and Mrs. Whitman. Contiguous to the one-acre tract in the 1991 donation and the one acre conveyed to the Whitmans by the Manns in 1984 was a.7-acre tract donated (Caldwell Parish No. 172095, Con. Bk. 174, p. 427) to Mr. and Mrs. Whitman by the McKeithen trust on August 16, 1991. The acre donated in 1981 to Mr. Whitman and the two subsequent transfers of adjacent property to the couple comprised *1051 the tract on which the couple's home was located. Evans' search of the records revealed two mortgages executed by Mr. and Mrs. Whitman, one for $2,500, dated January 6, 1994, and the other for $25,000, dated June 6, 1984, on the tract where their home was located.
Concerning the December 31, 1985 donation (Caldwell Parish No. 160138, Con. Bk. 154, p. 449) from Mrs. Whitman to Mr. Whitman, Evans testified the instrument donated one-half of her one-half undivided interest in a large tract known at that time as the G.L. Shipp estate. The donation referred to a mortgage (Caldwell Parish No. 141123, Con. Bk. 130, p. 77; Mtg. Bk. 93, p. 380) and stated that Mrs. Whitman intended to donate to Mr. Whitman one-half of her undivided one-half of the 1/32 interest she acquired from her mother, Mary Alice Shipp Mann, on October 20, 1978 by credit deed. Evans described the October 20, 1978 transfer by credit deed from Mary Alice Shipp Mann to her two children, George Allen Mann and Mrs. Whitman (then Marilyn Shipp Dunn, a single woman). The purchase price was $360,000, at 6% interest, payable in 30 equal installments of $12,000. The note was canceled July 5, 1990 (Mtg.Bk.93, p. 380).
Two subsequent partitions, both recorded May 31, 1988, dealt with that property. The Partition of the Patton Place (No. 165553 in Con. Bk. 163, p. 81) and the Partition of the G.L. Shipp Properties (No. 165554, Con.Bk. 163, P. 93) transferred property among the various owners in indivision. As a result, Mr. and Mrs. Whitman received three tracts which totaled approximately 300 acres in full ownership. Subsequently, Mr. and Mrs. Whitman and others and the Citizen's Progressive Bank made ratifications of the partition.
Mr. Whitman testified the couple constructed a home on the acre donated to him in 1981 by his wife. The two subsequent acquisitions of adjacent property were made in both their names. While they initially used savings and timber cut off the property to finance the construction, in 1984 or 1985, the couple borrowed $25,000 which they repaid to Caldwell Bank in 1987. They also borrowed and repaid a $2,500 loan.
Mr. Whitman denied ever subjecting his wife to cruel treatment before or after their separation in 1986. On cross examination, he specifically denied striking, choking or doing physical harm to her. Additionally, Mr. Whitman denied withdrawing money out of a 401K plan without his wife's knowledge. He testified that she had signed a consent form for him to withdraw funds. Mr. Whitman also stated he did not know whether payments were made every year on the mortgage of the 1985 donation property.
On rebuttal, Mrs. Whitman contradicted her ex-husband's denials of physical abuse. She explained that she had signed paperwork for her husband to withdraw 401K funds when he was unemployed. When he returned to work, he assured her he had ceased efforts to withdraw the funds. Later when she examined some of his personal things, she discovered he had withdrawn funds and was devastated by that information. Mrs. Whitman's daughter and ex-sister-in-law corroborated Mr. Whitman's physical violence towards Mrs. Whitman.
In written reasons signed April 28, 1998, the trial court noted that the divorce was granted on grounds of adultery. The trial judge found that Mrs. Whitman had met her burden of proof in establishing that she was entitled to revoke the inter vivos donations based upon ingratitude. La. C.C. art. 1560(2). On May 12, 1998, Judge Joyce signed the judgment annulling the two donations from Mrs. Whitman to Mr. Whitman. Mr. Whitman suspensively appealed.

DISCUSSION
La. C.C. art. 1559(1) provides that a donation inter vivos may be revoked on account of ingratitude of the donee. Ingratitude can take place only in three cases: (1) if the donee has attempted to take the life of the donor, (2) the donee has been guilty of cruel treatment, crimes or grievous injuries against the donee, or (3) the donee has refused the donor food when the donor was in distress. La. C.C. art. 1560. Only art. 1560(2) has any application to this dispute. A revocation for ingratitude must be brought within one year from the act of ingratitude or *1052 from the day the act was made known to the donor. La. C.C. art. 1561. Revocations based on ingratitude do not affect any alienation or mortgages made by the donee or any real encumbrances the donee placed upon the thing provided those transactions occurred before the filing of the suit for revocation. La. C.C. art. 1562. When a donation is revoked for ingratitude, the donee is obligated to restore to the donor the value of the thing given, estimating the value according to its worth at the time the action for revocation is brought and the fruits from the day it is brought. La. C.C. art. 1563.
Onerous and remunerative donations are not real donations. The rules peculiar to donations inter vivos do not apply. Rules restricting the causes for revocations of a donation inter vivos apply only to purely gratuitous donations and not to onerous or remunerative donations. Mobley v. Lee, 318 So.2d 631 (La.App. 3d Cir.1975).
First, Mr. Whitman asserts that the trial court erred in concluding that the donations were gratuitous and, therefore, subject to revocation for ingratitude. Appellant argues that the 1981 donation of one-half interest in a one-acre parcel plus a right of way was an onerous donation. Relying on his own testimony, Mr. Whitman asserts he agreed to build a home on the property in exchange for the donation and that he fulfilled the charge on the donation by building a 2,500 square foot home on the property. Except for the resolutory condition, the 1981 donation did not contain any kind of charge or obligation on Mr. Whitman. While Mr. Whitman's testimony was that the couple built a home on the property, there is no testimony that he was required to do so.
According to Mr. Whitman, the 1985 donation for the undivided interest in the large tract was subject to charges; i.e., his agreements to pay the installment notes on the mortgage on the property and to pay for the education costs for Mrs. Whitman's children from a previous marriage. Included in the education obligation was boarding school for Mrs. Whitman's daughter at $1,100 per month and college for both her son and daughter. According to appellant, the credit deed introduced into evidence indicated the onerous nature of the 1985 donation which he contends he paid off in 1990. Notwithstanding Mr. Whitman's contention that his acceptance of the donation was subject to the terms in the document, the irrevocable donation states that "Said donee does hereby accept this donation with gratitude, and acknowledges delivery and possession of same." The donation simply identified the property donated by Mrs. Whitman as property "that she acquired from her mother, Mary Alice Shipp Mann, by act of credit deed sale dated October 20, 1978 and recorded November 2, 1978 and recorded in Mortgage Book 93, page 380, Conveyance Book 130, Page 77, Records of Caldwell Parish, Louisiana." The donation contains nothing indicating that Mr. Whitman personally assumed any obligation for the mortgage. His contention that he was obligated to pay the mortgage in the credit deed is belied by his testimony that he did not know if the mortgage was paid every year during the marriage. Further, the record is silent about Mr. Whitman being obligated to finance the education of Mrs. Whitman's children.
Mr. Whitman contends that the trial court erred in finding the presumption of community was rebutted through clear and convincing evidence, in finding the credit sale deed from her mother to Mrs. Whitman was a simulation, and in disregarding the doctrine of estoppel by deed. These complaints are without merit and have no application to this dispute. There is no indication that the trial court made any of those determinations. The trial court revoked the donation based upon cruel treatment of the donor by the donee who committed adultery during the marriage. The Civil Code provides that a revocation for ingratitude does not affect alienations, encumbrances or mortgages made by the donee prior to the time the suit for revocation is brought. La. C.C. art. 1563. Further, the donor's remedy when a donation is revoked for ingratitude is the restoration of the value of donation and the fruits thereof. La. C.C. art. 1563. The existence of the donations to Mr. Whitman and the subsequent transactions on the public records by the couple affecting the property are undisputed *1053 and do not hinder the donor's right to timely seek revocation for ingratitude.
Finally, Mr. Whitman contends that the trial court erred in interpreting the partition deed through aid of extrinsic evidence. He relies on Doyal v. Pickett, 628 So.2d 184, 187 (La.App. 2d Cir.1993) which stated:
The cardinal rule to be followed in construing deeds, uncertain because of ambiguity, is to ascertain the intention of the parties from the entire language of the deed. In the interpretation of deeds, the intentions of the parties must be gathered from an inspection of the instrument itself, without the aid of extrinsic evidence, if their intentions can be thus ascertained. If the description is so ambiguous as to leave doubt as to the parties' intent, the court may resort to extrinsic evidence as an aid in construction.
The seller is bound to explain himself clearly respecting the extent of his obligations: any obscure or ambiguous clause is construed against him. La. C.C. art. 2474. In deeds, where language making an exception or reservation is doubtful, it must be construed most favorably to the grantee. (Citations omitted.)
Mrs. Whitman correctly argued that the donations were not ambiguous and imposed no charges on Mr. Whitman. Even if evidence outside the donations were considered, the evidence presented does not support that these donations were onerous ones.
In Mobley v. Lee, supra, the court noted that if a donation is subject to a charge, it is not a true gratuitous donation. For an onerous or remunerative donation, the rules for interpretation of contracts would apply. If doubt arises from lack of a necessary explanation which one party should have given, then the contract is interpreted in the manner favorable to the other party. Under these circumstances, if the language of a donation was ambiguous, the ambiguity should be construed against the donor. The court found the donation made by an aunt in consideration for love and affection she had for her niece and "for her personal care" was purely gratuitous and unambiguous. The court further noted that, if "for her personal care" had been considered ambiguous, then the parol evidence at trial showed the donation was gratuitous. Because that donation was gratuitous, it could not be unilaterally revoked. Revocation required a showing of ingratitude. Mobley v. Lee, supra.
As purely gratuitous donations, Mrs. Whitman's gifts of land to Mr. Whitman during their marriage were subject to revocation for ingratitude. We find no palpable error in the trial court's conclusion that Mr. Whitman's adultery constituted cruel treatment and grievous injury to Mrs. Whitman. Therefore, the gratuitous donations made by her to him were revocable. Pursuant to her timely action based on his ingratitude, the donations were validly revoked. La. C.C. arts. 1559, 1560(2) and 1561.

DECREE
The judgment of the trial court is affirmed at appellant's costs. AFFIRMED.