405 So.2d 536 (1981)
Robert R. SANDERS
v.
UNITED DISTRIBUTORS, INC. et al.
No. 11851.
Court of Appeal of Louisiana, Fourth Circuit.
August 24, 1981.
Rehearing Denied November 20, 1981.
*537 Sharon A. Perlis, Metairie, for plaintiff-appellee.
Arthur L. Ballin, Frank C. Dudenhefer, New Orleans, for plaintiffs-appellants.
Before REDMANN, BARRY and KLIEBERT, JJ.
REDMANN, Judge.
Defendant employer appeals from a judgment awarding to a retired employee a pension fund benefit as once erroneously computed and paid rather than as later calculated.[1] The question is whether plaintiff in fact suffered any detriment because of reliance upon defendant's erroneous representation of the amount of plaintiff's pension (so that defendant would be obliged to pay the mistaken amount, whether on the civil law theory of venire contra factum proprium non valet or on a theory of promissory estoppel or equitable estoppel or even simple delict[2]).
*538 Defendant's intent from the creation of the noncontributory pension plan in December 1966 was that the "past employment" element of the pension be based on past earnings and specifically on 1966 or November 1966 earnings. An error in a 1972 amendment substituted 1973 for 1966, however, until a later corrective amendment. The error in this case arose when plaintiff's benefit was allegedly erroneously computed using his 1973 earnings, resulting in an overstatement to plaintiff of what his pension would be.
Plaintiff's employment arrangement as defendant's vice-president and sales manager in 1966 (through 1972) was that he received monthly pay checks totalling $12,400 plus mandatory "bonuses" each quarter totalling another $11,600, making his guaranteed earnings $24,000, in addition to which he received another bonus in some form of profit-sharing. Although the pension plan worksheet showed only $12,400 as plaintiff's yearly earnings for 1966 through 1972, it showed $30,231 for 1973; and when in 1974 plaintiff's health prompted early retirement consideration, that 1973 figure (defendant alleges but does not prove) was erroneously used as the base for calculating the "past employment" portion of plaintiff's pension. Plaintiff was accordingly told that his pension at age 55 would be $284 monthly with a lump sum value of $43,631. Those figures are now said to be wrong in that the "past employment" portion of the pension was calculated from 1973 instead of 1966 earnings. Nevertheless plaintiff was paid the $284 each month for almost two years before the error was noted. Thereafter plaintiff was notified of the error and thenceforward was paid $120 a month and was informed that the lump sum value of his pension fund had been only $17,950.[3] (The pension plan was finally terminated December 1, 1977 and plaintiff was paid $16,395.46 as the then remainder of the original $17,950, without prejudice to his rights.)
Plaintiff argues that the erroneous $284 figure supplied by defendant caused him to take early retirement at age 55, by creating in him the expectation that that amount would be paid, giving him a reasonably adequate total retirement income when added to his social security benefits and other income he had. Plaintiff argues injurious reliance, contending that he would not have taken early retirement except for defendant's representation that he would receive $284 monthly.
Defendant argues that the record does not establish detriment to plaintiff because *539 plaintiff could not have continued to work irrespective of his pension amount and therefore suffered no harm by retiring early. Indeed, defendant perhaps could have discharged plaintiff before his 55th birthday on the basis that he was unable to perform his duties. Instead defendant allowed him to come in to the office about half a day for the last several months before the 55th birthday so that he would be able to retire.
Defendant's factual argument finds support in the record, although there is also support in the record for the hope that plaintiff's health might in reasonable time have allowed him to return to full employment.[4] Defendant's legal argument fails, however, because in a contra factum proprium or equitable estoppel theory of recovery there is no requirement of equivalency between detriment and result of mistaken representation, and in a promissory estoppel theory there is no need for equivalency of detriment and promise; and in a delictual theory defendant's argument would affect not liability but measure of damages. Allowing to the trial judge the basic fact-finding function that is his, Canter v. Koehring Co., La.1973, 283 So.2d 716, we cannot say that he erred in concluding that plaintiff could have continued in his employment for at least some period beyond the day he retired, and that defendant would not have fired him during his recuperative period had he sought to continue, but would have allowed him to continue (or even that, as his doctor's testimony suggests, his return to reasonable health would have allowed him to continue indefinitely).
Thus there was detriment in his electing, as he testified, to accept early retirement. In contract theory, that suffices to make the implied promise enforceable or the alleged error in the representation unassertable.
In tort theory, if plaintiff's action be limited to one for delictual damages caused by the fault of defendant's miscalculating employee, the measure of the damages is the same (save the mitigation factor). The misrepresentation caused plaintiff to lose his $32,000 earnings but to gain a retiree's ease, and his consent to that exchange with the pension represented to him makes that pension rather than the forgone earnings the correct basis for an award of the difference between the mistaken figure and the correct figure. (We repeat that the correct figure is not established in the record, but we estimate it, from the pension plan formula as we deem it must be interpreted, as nearer to the "mistaken" $284 than to $120.) Had the mistake been discovered before plaintiff retired, or in preparing the first or second pension check, perhaps plaintiff could have been obliged to continue or to return to work in mitigation of damages, and his reasonable damages would have been little or nothing. Or, if he were much younger than 57 years, and in robust health, even after two years (or even today) perhaps he could be told to mitigate damages by returning to work or obtaining other employment. But defendant does not offer a return to its employ and there is a reasonable basis in plaintiff's age alone (to which *540 his prior health history adds emphasis) for concluding that the possibility of plaintiff's mitigating his damages is too remote to reduce the award for the alleged difference in pension of $164 a month.
The judgment appealed from therefore rightly found plaintiff entitled to the $283.92 pension or a lump-sum value (as of retirement) of $43,631.03. The judgment errs, however, in awarding both $164.34 monthly for life as the difference between $283.92 and $119.58 and the difference in lump-sum value as well: that would be a double recovery and plaintiff concedes that (if the judgment also awards the cash value difference) he is entitled to the monthly difference only for the period December 1, 1976 (when the monthly benefit was reduced) until December 1, 1977 (when defendant elected, as it had the right, to terminate the monthly benefit by paying him the lump-sum value, although defendant paid the wrong lump sum).
The judgment also errs in the amount it awarded to give plaintiff a lump sum based on $283.93 rather than $119.58. The larger monthly amount had a lump-sum value of $43,631.03 (and the smaller had a value of $17,950) at the date of plaintiff's retirement at age 55.
But that lump-sum value must be reduced. Any periodic annuity payment, like the monthly payment on a mortgage payable in equal installments, consists in part of interest payment and in part of repayment of principal. Just as the mortgage principal balance is reduced by the principal part of its monthly payments, so is the lump-sum or principal value of an annuity reduced by the principal part of its monthly payments. Because of this mathematically inescapable reduction of the principal or lump-sum value, the (incorrect) $17,950 lump-sum value of plaintiff's pension as of the date of his retirement had been reduced to $16,394.46, or to 91.3396% of its original value as of December 1, 1977 when the lump sum was paid. The same inescapable mathematics would have reduced the (correct) $43,631.03 original value to $39,852.41 as of December 1, 1977, and that is the amount to which plaintiff was then entitled rather than the original value of $43,631.03. Because plaintiff received $16,394.46, he is entitled to $23,456.95 ($43,631.03 less $16,394.46), with interest from December 1, 1977 (rather than the earlier date of judicial demand).
Amended to award $164.34 monthly from December 1, 1976 until December 1, 1977 with legal interest on each installment from due date, plus $23,456.95 with legal interest from December 1, 1977 and all costs.
NOTES
[1] There was in fact a trust that managed the pension funds and payments, which would present a further problem in that all of its funds belonged, in effect, to its beneficiaries in determinate amounts (although defendant might have been obliged to contribute any further amounts needed). It was stipulated, however, that the defendant employer would be treated as the proper defendant, and that the issues "are, A, the amount of benefits ..., B, the question of estoppel ...."
[2] This writer has not found an instance of Louisiana's expressly utilizing the civil law principle venire contra factum proprium non valet. Litvinoff, Louisiana Civil Law Treatise, Obligations, I, § 88, n. 32, translates "no one is allowed to go against (the consequences of) his own acts," and cites the principle in disputing the assertion that estoppel is an exclusive development of the common law. "It cannot be denied that this principle underlies many articles of the civilian codes, such as LSA-C.C. art. 1791." (See also § 135's discussion of reliance in the related context of subjective will and objective declaration and II § 94's bona fide purchase doctrine.)

Puig Brutau, Estudios de Derecho Comparado (1951), 97-136, (cited by Litvinoff) provides a comparative law discussion of the principle, la doctrina de los actos propios (the doctrine of one's own acts). He perceives a "substantial identity," p. 106, of venire contra factum proprium non valet and estoppel (although estoppel is broader, p. 114, and promissory estoppel "could be studied in comparison with the continental doctrine of culpa in contrahendo," p. 124). The principle "is founded on [the notion] that it is not licit [for one] to enforce a right in contradiction to one's previous conduct, when that conduct, interpreted in good faith, would justify the conclusion that the right does not exist or will not be enforced," p. 111. The constitutive elements of the principle (the doctrine of one's own acts) are "a) Certain conduct by one party which b) may have engendered a situation contrary to reality, that is, one [merely] apparent and [yet], by means of that appearance, capable of influencing the conduct of others; and c) may be the basis for trust [confianza; reliance?] by another party who may have proceeded in good faith and therefore may have acted in a manner that would cause him a detriment if his trust should remain frustrated," p. 112.
There are many Louisiana cases that discuss estoppel, but they typically do so in the context of refusing it effect, as by declaring estoppel not favored in law or inapplicable for lack of injurious reliance (in either "promissory estoppel," Whitehall Oil Co. v. Boagni, 1969, 255 La. 67, 229 So.2d 702, or "equitable estoppel" to deny a previous representation, Wilkinson v. Wilkinson, La.1975, 323 So.2d 120). The parties to the present litigation appear to accept that, if injurious reliance exists, liability results from an estoppel theory.
If a mistaken representation (by one under a duty to provide correct information) be treated as "fault" within La.C.C. 2315 for purposes of a delictual action, an element of that action is that the fault (the misrepresentation) cause the injury (the retirement with inadequate pension).
Thus, whatever the theory of recovery, plaintiff must prove something akin to injurious reliance.
[3] Defendant's calculation of $120 a month (and $17,950) was based on its interpretation of its own pension plan's definition of "earnings": "the total net earnings received from the employer during any month, excluding bonuses and other forms of extra compensation." Defendant excluded not only plaintiff's profit-sharing bonus, but his mandatory "bonuses" as well, as "bonuses and other forms of extra compensation" for purposes of calculating his "earnings," resulting in his "past employment" and the first five years of the "future employment" portion of the pension's being based on $12,400 earnings notwithstanding that plaintiff's guaranteed earnings were $24,000 each of those years. We here note the more probable interpretation of that contract is that "bonuses" means only "extra compensation" in addition to regular earnings, because the phrase "bonuses and other forms of extra compensation" strongly so suggests. We would thus reject the $120 calculation because based on only $12,400 rather than the $24,000 guaranteed earnings.

Defendant's president in 1973 agreed with plaintiff that it was unfair that plaintiff's pension be calculated on the basis of his every-month pay checks without any benefit for his guaranteed quarterly bonuses. Plaintiff's own subordinates were being treated as having higher "earnings" when in fact earning much less. Defendant's president therefore caused to be written a letter to notify the plan's actuary that correct earnings for plaintiff for five years before 1972 were $24,000. That letter did not order a like change in the 1966 earnings, however, which determined the "past employment" portion of the pension for plaintiff's 21 years before the plan began and which, as we have just explained, should also have reflected plaintiff's true "earnings" of $24,000 annually. Furthermore, the five years ordered to be changed somehow remained unchanged notwithstanding that the actuary acknowledged the letter ordering the change. We are satisfied that the $120 calculation is based on these erroneous foundations, and that the result of a correct calculation would be nearer to $284 than to $120.
[4] Defendant's principal support is plaintiff's application to the Department of Health, Education and Welfare for disability insurance benefits in January 1975, and that Department's determination of March 4, 1975, concluding that plaintiff was indeed disabled and had not engaged in "significant gainful activities" since September 3, 1974. Plaintiff also requested a waiver of VA premiums for disability as of February 4, 1974, and a private insurer conceded plaintiff's total disability prior to November 4, 1974 (the month in which occurred the allegedly erroneous representation of his employer's retirement benefit.)

It cannot be disputed that plaintiff was at least temporarily totally disabled by a heart condition (including a 1974 heart attack) requiring open heart surgery on April 25, 1974, as a consequence of which he did not attempt to return to work until September 1974. Thereafter he returned for only a few hours a day (sometimes having to leave).
Nevertheless plaintiff's cardiovascular surgeon expressed the view that plaintiff's postsurgical progress was satisfactory, and the trial judge did have this evidence to support a conclusion that at least a substantial chance existed for plaintiff's return to employment. By trial time, the trial judge was "impressed with the demeanor of the plaintiff, who spoke in a clear and controlled tone of voice and appeared to be in good health."