Huey Henry BREAUX, d/b/a H.H. Breaux, Enterprises, Plaintiff-Appellee,

v.

SCHLUMBERGER OFFSHORE SERVICES, A DIVISION OF SCHLUMBERGER LTD., Defendant-Appellant.

No. 86–4441.

United States Court of Appeals, Fifth Circuit.

Nov. 5, 1987.

Michael P. Hantel, New Orleans, La., Ramon P. Marks, New York City, for defendant-appellant.

John G. Swift, Davidson, Meaux, Sonnier & Roy, Lafayette, La., for plaintiff-appellee.

Before GARZA, WILLIAMS, and GARWOOD, Circuit Judges.

GARZA, Circuit Judge.

A landlord in Louisiana brought a diversity suit against a prospective tenant, seeking specific performance of an oral lease and damages. In this court's first review of the litigation, it was held that the employee lacked actual or apparent authority to bind his employer to the lease agreement with the landlord. In this court's second review of the matter, it was held that, even absent actual or apparent authority, the landlord relied to his detriment on the agent, and therefore the employer was liable in tort on the basis of respondeat superior.

While studying the two opinions in the case, a question arose among some judges of the court. That question focused on

---

whether there can be a finding of detrimental reliance under Louisiana law where there is a previous finding of no actual or apparent authority. At the request of a member of the court, the mandate was stayed.

Because there is no controlling law on this point and because of the disagreement regarding the interpretation of Louisiana law, the court believes that this appeal presents important principles which are particularly appropriate for resolution by the Louisiana Supreme Court. The court decided, therefore, to defer decision on the question and certify it to the Louisiana Supreme Court. In response to our direction, counsel for the parties have agreed that the statement of the case, for purposes of this certification, should be the same statement as set out by the court in its June 2, 1987 opinion, 817 F.2d 1226 (5th Cir.).

## I.

In July of 1981, Eugene Pohoriles, the former vice-president and general manager of Schlumberger Offshore Services ("Schlumberger"), sent construction coordinator, T.C. Nicholls, to Lafayette, Louisiana to locate suitable office space for a new Schlumberger division. Because of a rise in trade in the oil market, office space in Lafayette was in great demand and lessors could rent space easily, while virtually setting their own terms. Nicholls reviewed various plans and discussed lease terms with owners of several buildings, including Huey Henry Breaux ("Breaux"). Nicholls preferred Breaux's property and negotiated with Breaux informally. Although Nicholls was a senior engineer with Schlumberger and had been with the company for 32 years, he informed Breaux that final approval would have to come from his superiors at Schlumberger.

Accordingly, Pohoriles visited Breaux's building and expressed approval of the location and the property. He told Nicholls to contact Breaux again. On July 16, 1981, Nicholls sent a letter to Breaux indicating that Pohoriles had "selected" Breaux's building for the Schlumberger office in Lafayette. The letter "confirmed" Schlumberger's "intention to enter a rental agreement" for the second and part of the first floor. Further, it requested Breaux to forward a written agreement "for consideration and signature."[1] Breaux responded by promising to cease all efforts to rent the subject space, and holding the space until the projected move-in date of January 1, 1982.

In the following weeks, Nicholls, with Breaux's knowledge, informed other Lafayette lessors that Schlumberger had decided on Breaux's property and would not pursue other options. Additionally, Nicholls contacted an architect to draw up floor plans, a signmaker to create a logo and sign, and a draper and interior decorator about furnishings. In an October 12 letter to Breaux, Nicholls expressed satisfaction with the choice of Breaux's property, and urged Breaux to mail the written lease agreement. In part, the letter stated, "The more I see of your building the more I feel we made an excellent choice. We are waiting on your lease contract which will allow us to move in after January 1."

On October 15, Breaux mailed Schlumberger a proposed lease agreement which had been drafted by Breaux and his agent, Robert Marceaux. The thirteen page document incorporated the terms previously negotiated: a term of five years, at $16.00 per square foot or an annual rent of $95,336.16, a January 1 move-in date, and an area encompassing all of the second floor. Because Nicholls was occupied when the document arrived, it remained on his desk

---

1. Typed on Schlumberger stationery, that letter stated in pertinent part:

   Gene Pohoriles, our Vice President and General Manager, has selected your new office building as the most suitable for our operation for the next several years. This will confirm our intention to enter a rental agreement with your company regarding the office building now under construction on Congress Street. We ask that you hold the entire upper floor, and the areas on both sides of the entrance way on the lower floor for us.

   * * *

   Please select the best time for sending the actual rental agreement to us for consideration and signature.

unread for several days instead of being processed in the usual manner. Two events then transpired which changed the parties' agreement. First, due to a crisis in the oil industry, Lafayette became a lessee's market and the demand for office space diminished. Second, Pohoriles was replaced as vice-president at Schlumberger.[2] Of course, the new vice-president disapproved of Breaux's property, preferring larger and more centrally-located offices.

On November 13, impatient with Schlumberger's delay in signing the agreement, Breaux wrote a letter to Nicholls threatening a suit to force Schlumberger to consummate the transaction. In response, Schlumberger offered a deposit to hold the premises open until February while the company looked elsewhere. In January of 1982, Breaux rejected the offer and brought a diversity suit for specific performance. When Schlumberger later leased other premises, Breaux amended his complaint to include a plea for damages. Although Breaux immediately began searching for other tenants, he was unable to lease the building on terms as favorable as those in the Schlumberger deal.

Following a bench trial in December of 1984, the district court concluded that Schlumberger, through Nicholls, had orally leased Breaux's building. Although a written lease was contemplated, the oral agreement was binding because: 1) the principal terms of the lease were finalized; and 2) both parties had manifested their intent to be bound by acting upon the agreement to the fullest extent possible given that the building was not yet finished. Schlumberger's consent to the agreement was implied from Nicholl's letters and actions. While Nicholls had no actual authority to bind the company, he had apparent authority due to the content of the letters, the use of company stationery, his position in the company, and his dealings with outside companies such as the architect, signmaker, and other lessors in Lafayette. Judgment was rendered in favor of Breaux in the sum of $124,069.64, together with interest.

On January 16, 1986, a summary calendar ruling of this Circuit reversed the judgment of the district court. We ruled that, although an oral lease did in fact exist, Nicholls had no apparent authority to enter into a lease agreement with Breaux. *Breaux v. Schlumberger Offshore Serv.*, No. 85–4230, slip op. at 7 (5th Cir.1986) [781 F.2d 901 (table) ]. On February 14, 1986, this Court, while reviewing Breaux's Petition for Panel Rehearing, remanded the case to the district court for consideration of Breaux's alternative theory of detrimental reliance. The detrimental reliance theory, although pleaded by Breaux, was not decided upon in the district court.

On remand, the court found that Breaux justifiably relied, to his detriment, on Nicholls' July 16 letter indicating that Schlumberger intended to enter a binding lease agreement. Finding that Breaux had proven the elements of a cause of action for detrimental reliance, the court once again awarded damages of $124,069.64. This figure was based on the difference between what Schlumberger would have paid under the lease and what Breaux was able to receive from other lessees.

## II.

In light of the uncertainty of Louisiana law on the question of authority and the tort of detrimental reliance, this court certifies the following question to the Louisiana Supreme Court:

### CERTIFICATE FROM

### THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

### TO THE SUPREME COURT OF LOUISIANA

### PURSUANT TO RULE XII, LOUISIANA SUPREME COURT RULES

### TO THE SUPREME COURT OF LOUISIANA AND THE HONORABLE JUSTICES THEREOF:

### I. STYLE OF THE CASE

The style of the case in which this certificate is made is *Huey Henry Breaux, d/b/a*

---

**2.** Pohoriles died before the trial and before Breaux had an opportunity to depose him.

*H.H. Breaux Enterprises, Plaintiff-Appellee, versus Schlumberger Offshore Services, a division of Schlumberger Ltd., Defendant-Appellant.* Case No. 86–4441, United States Court of Appeals for the Fifth Circuit, on appeal from the United States District Court for the Western District of Louisiana.

## II. QUESTION CERTIFIED TO THE SUPREME COURT OF LOUISIANA

The following question of law is hereby certified to the Supreme Court of Louisiana for instructions based upon the facts of the case which is the subject of this certification:

> Under Article 1967 or 2315 of the Louisiana Code, does the finding of no actual or apparent authority of the employee to enter into a lease agreement on behalf of his employer preclude a subsequent finding of detrimental reliance upon the promises or actions of the employee in the lease negotiations in this case? [3]

We disclaim any intention or desire that the Supreme Court of the State of Louisiana confine its reply to the precise form or scope of the question presented.

This court also certifies to the Supreme Court of the State of Louisiana that its answer to this question will be determinative in this case, resolving all issues remaining in contention between the parties of this appeal.

The record in this case, together with copies of the parties' briefs, is transmitted herewith.

QUESTION CERTIFIED.

---

[3.] Judge Garwood, who dissented from the original opinion in this case, would add the following to the question certified:

> If not, what are the required elements of detrimental reliance, and the measure of recovery for it, where the defendant's employee upon whom reliance is placed lacks actual or apparent authority to bind the defendant to the transaction in issue.

Neither the author nor Judge Williams believe that it is necessary to address these additional considerations.