Gary W. CROSS, et al.

v.

SHELL OIL COMPANY.

Civ. A. No. 88–29–B.

United States District Court,
M.D. Louisiana.

Aug. 18, 1988.

Dan M. Scheuermann, Baton Rouge, La., for plaintiffs.

Charles M. Raymond, New Orleans, La., L. Chris Butler, Co–Counsel, Out of State, not admitted to Supreme Court of La., for defendant.

### RULING ON SHELL OIL COMPANY'S MOTION FOR SUMMARY JUDGMENT

POLOZOLA, District Judge.

Shell Oil Company ("Shell") has filed a motion for summary judgment seeking to dismiss the suit filed by Gary W. Cross and Karen Cross, individually and as administrator of the estate of the minor child, Darren B. Cross. For reasons which follow, the court finds that defendant's motion for summary judgment is hereby granted.

Gary Cross contends that he was hired by Shell Western E & P, a wholly owned subsidiary of Shell, on or about January 7, 1980. It is clear that the contract of employment was for an indefinite term and there was no written contract of employ-

ment signed by the parties. Plaintiff contends that Shell made an oral contract with him which guaranteed his employment at the Geismar, Louisiana facility. More specifically, plaintiff contends that Shell hired him with full knowledge of his special need to be located in Geismar in order to care for his hemophiliac son. Approximately five years later, following several disputes with his supervisors over company ethics, Shell advised Cross that he was being permanently transferred from the Geismar plant. Cross resigned his employment with Shell and filed this suit. Plaintiff seeks recovery for breach of contract and for consequential defamation.

Three recent appellate court decisions decided by the Louisiana Supreme Court, the Fifth Circuit Court of Appeals, and a Louisiana Court of Appeal, dispose of the issues involved in this case insofar as the breach of contract claim is concerned. In *Walther v. National Tea Company*, 848 F.2d 518 (5th Cir.1988), the Fifth Circuit Court of Appeals stated as follows:

A Louisiana court recently has analyzed the abuse-of-right doctrine in an employment setting, *Ballaron v. Equitable Shipyards, Inc.*, 521 So.2d 481 (La.Ct.App.1988), rejecting the contention that notwithstanding the employment-at-will-status of two employees, their discharge represented an abuse of right. The employees stated that they were fired because they refused to submit to a polygraph examination. The court found that the employer had a legitimate interest in enforcing the company policy which required the discharge of an employee who refused to take the examination. Because of this interest, the court found that the employer was not liable for an abuse of rights.

Applying the *Lambert* [*v. Maryland Cas. Co.*, 403 So.2d 739 (La.Ct.App. 1981)] test, we need only answer the question whether National Tea received any benefit by exercising its legal right to discharge employment-at-will employees. Notwithstanding the inequity of the practice of firing employees to prevent the accrual of benefits, by discharging the two co-managers National Tea avoided the liability inherent in the vesting of their pensions. Because of this interest, the Louisiana precedent mandate a finding that National Tea did not breach the abuse-of-rights doctrine.

In footnote 1 of the *Walther* opinion, the Fifth Circuit noted as follows:

The Louisiana Civil Code addresses employment-at-will status in article 2747 which reads:

A man is at liberty to dismiss a hired servant attached to his person or family without assigning any reason for so doing. The servant is also free to depart without assigning any cause.

Louisiana case law has recognized that any employee hired for an indefinite term may be dismissed by the employer at any time for whatever reason without the employer incurring liability for the discharge. *Ballaron*, 521 So.2d at 482. *See also Gil v. Metal Service Corp.*, 412 So.2d 706 (La.Ct.App.) *writ denied*, 414 So.2d 379 (La.1982); *Jackson v. East Baton Rouge Parish School Board*, 393 So.2d 243 (La.Ct.App.1980).

In *Brannan v. Wyeth Laboratories, Inc.*, 526 So.2d 1101 (La.1988) the Louisiana Supreme Court reviewed the law regarding termination of employment agreements. The court stated as follows:

Several articles of the Louisiana Civil Code are pertinent to this issue.

"Persons who have attained the age of majority cannot bind themselves for a longer term than ten years." C.C. 167.

"A man can only hire out his services for a certain limited time, or for the performance of a certain enterprise." C.C. 2746.

"A man is at liberty to dismiss a hired servant attached to his person or family, without assigning any reason for so doing. The servant is also free to depart without assigning any cause." C.C. 2747.

"A contract of unspecified duration may be terminated at the will of either party by giving notice, reasonable in time and form, to the other party." C.C. 2024. There is a consistent line of jurisprudence in this state holding that an em-

ployment contract for life or for an indefinite term is terminable at the will of either party. (citations omitted) Also a contract for longer than the time provided in art. 167, which is presently ten years, is void. (citations omitted) In *Pitcher v. United Oil & Gas Syndicate*, 174 La. 66, 139 So. 760, 761 (1932), this court held that a contract for employment as long as the employer-master is operating is a contract for an indefinite period, and without other consideration from the employee-servant than services to be rendered, the contract is terminable at the will of either party. In *Pitcher* the court elaborated on the reasons behind this law:

"... An employee is never presumed to engage his services permanently, thereby cutting himself off from all chances of improving his condition; indeed, in this land of opportunity it would be against public policy and the spirit of our institutions that any man should thus handicap himself; and the law will presume almost juris et de jure that he did not so intend. And if the contract of employment be not binding on the employee for the whole term of such employment, then it cannot be binding upon the employer; there would be lack of 'mutuality.' But if the employee has given, in addition to the services which he promised to perform, a consideration, whatever the nature of such consideration be, then he has in effect purchased, for a valuable consideration, an option to keep the employment for the term specified; and such a contract is a valid one."

■ Thus, in summary, a contract of employment is terminable at will unless it is for a definite term. Absent a contract for a fixed period of time, an employee is terminable at will, at any time, for any cause, or for no cause. In the case before the court, plaintiff acknowledges that he was an employee hired without a term and that Shell had a right to fire him at will. However, Cross contends that Shell was barred from transferring him from the Geismar facility by the doctrine of equitable estoppel. This contention is without merit.

A party invoking the doctrine of equitable estoppel must prove the facts upon which the estoppel is based and must establish all three elements of estoppel: (1) a representation by action or word; (2) justifiable reliance on the representation; and (3) a detrimental change in one's position because of the reliance. Estoppel will not lie if any of the above elements remain unproven. *Duthu v. Allements' Roberson Mach. Works*, 393 So.2d 184 (La.App. 1st Cir.1980); *Wilkinson v. Wilkinson*, 323 So. 2d 120 (La.1975). Estoppel, because it bars the normal assertion of rights, is not favored in Louisiana law and is used sparingly. *Duthu v. Allements' Roberson Mach. Works, supra, cited in Thebner v. Xerox,* 480 So.2d 454, 458 (La.App. 3rd Cir.).

The plaintiff has failed to show any evidence of detrimental reliance in this case. The record fails to establish or contain evidence of foregone opportunities, job or otherwise, which resulted from plaintiff's reliance on Shell's alleged representations. The transfer would not have taken plaintiff's job benefits, reduced his salary, or caused any other change in his employment except for the site of his employment. Finding no evidence of detrimental change, the court cannot enforce the doctrine of equitable estoppel under the facts of this case. *See Thebner v. Xerox, supra; Breaux v. Schlumberger Offshore Services,* 817 F.2d 1226 (5th Cir.1987).

■ Cross also contends that the transfer is against public policy. This contention is also without merit. The court has previously referred to the opinion of the Fifth Circuit in *Walther v. National Tea Company.* Furthermore, the Louisiana Supreme Court has again reaffirmed the termination at will doctrine in the *Brannan* case. Because Cross was hired on an indefinite term basis and because there was no fixed term for his employment, Shell had a right to terminate him at will under the facts of this case.

■ Plaintiff further contends that he should be allowed to recover from the defendant because of alleged defamatory remarks made by the defendants. This claim is also without merit. In *Rouly v. Enserch*

*Corp.,* 835 F.2d 1127, 1130 (5th Cir.1988), the Fifth Circuit Court of Appeals stated that to win a suit for defamation, a Louisiana plaintiff must prove the defendant (1) maliciously, (2) published (3) a defamatory message that (4) was false and (5) caused injury. If the message sued for is defamatory per se—that is, if the words, without reference to their conduct, amount to accusation of a crime or similar conduct—then malice and injury are presumed. The defendants deny that they defamed the plaintiff and further contend that the alleged defamatory statement was made between employees of Shell and concerned the plaintiff's work. Therefore, Shell contends that it is entitled to assert the defense of qualified privilege. In the *Rouly* decision the Fifth Circuit noted that the qualified privilege is an affirmative defense to defamation provided by Louisiana law for one who can prove that he made a statement (1) in good faith, (2) on a matter in which he had an interest or a duty, (3) to another person with a corresponding interest or duty. Good faith or lack of malice does not mean lack of hostility or ill feeling; it means the person making the statement must have reasonable grounds for believing that it is true and that he must honestly believe that it is a correct statement. The burden of proving malice or lack of good faith rests on the plaintiff. *See also Garziano v. E.I. Du Pont De Nemours & Co.,* 818 F.2d 380, 385–88 (5th Cir.1987).

The court finds in this case that the report addressed to Cross, written by Ann Musser and signed by Cross' supervisor, G.P. Harper, after a meeting with Cross is a privileged communication. The letter in question pertained to plaintiff's job performance. The alleged defamatory portion of the report provides:

> . . . your performance at White Castle has been unsatisfactory. You have projected an attitude of not wanting to be at White Castle and a disinterest in learning the job. You have not taken the initiative to get involved in the location's purchasing needs which has resulted in Operations either seeking help from other sources or attempting to do the work themselves. This is unacceptable.

> While I understand your concern over your son's health condition, no jobs are available outside White Castle.

> Immediate and sustained improvement in your performance is expected and failure to do so will result in further disciplinary action up to and including termination. You have the knowledge and experience to perform this assignment but must make the commitment to do so.

There is no evidence in the record to establish that Musser had reason to know that the report was false or that she did not honestly believe that it was true.

In opposition to the motion for summary judgment, the plaintiff has submitted several affidavits setting forth exemplary performance appraisals. This evidence, however, fails to preclude a motion for summary judgment. The issue before the court is whether or not the report prepared by Ms. Musser was defamatory insofar as Cross' performance while at White Castle. None of the performance reports in the record relate to this crucial period. In summary, there is simply no evidence in the record to establish that the person making the statement, Musser, had reasonable grounds for believing that the statements set forth in her report were not true. There is also no evidence in the record of any malice, actual or implied, insofar as this case is concerned.

■ Finally, plaintiff contends that Musser communicated the report to unprivileged persons. This argument is also without merit. Louisiana courts have held that persons making statements during an unemployment compensation hearing enjoyed a qualified or conditional privilege. *White v. Baker Manor Nursing Home, Inc.,* 400 So.2d 1168, 1169 (La.App. 1st Cir.1981); *Wayne McDonald v. Delta Airlines,* CA 86–397 (M.D.La. March 9, 1987), aff'd 829 F.2d 1123. Therefore, publication of the report to an administrative law judge during a hearing is inconsequential. Furthermore, plaintiff's affirmation that he "became aware" that Ms. Musser had informed former employees at the SWEPI Tebone plant in Geismar "that it would not

be a good idea for them to see me at the at the company's Christmas party" is also insufficient to oppose the motion for summary judgment. Besides being hearsay, the Fifth Circuit has recently held that all employees have an interest in their employer's termination policies and grounds for termination. *Garziano, supra.*

Therefore, the court finds that there are no material issues of fact in dispute and that the defendant Shell is entitled to summary judgment as a matter of law.

Judgment will be entered granting defendant's motion for summary judgment and dismissing plaintiff's suit with prejudice at plaintiff's cost.